UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVID M. EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-03096-RLM-MPB |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | |
| EXPERIAN INFORMATION SOLUTIONS, | ) | |
| INC., | ) | |
| PHH MORTGAGE CORPORATION, | ) | |
| FIRST MERCHANTS BANK, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR
SANCTIONS AND PLAINTIFF'S CROSS-MOTION FOR SANCTIONS**

**I.    Introduction**

Defendant, Experian Information Solutions, Inc. ("Experian") has filed a motion for

sanctions against Plaintiff's counsel, Barker Hancock & Cohron ("BHC"), pursuant to 15 U.S.C.

§ 1681n(c), 28 U.S.C. § 1927, and this Court's inherent authority. Experian argues that BHC has

abused the Fair Credit Reporting Act ("FCRA") provision that entitles recovery to attorney's

fees by bringing frivolous claims and then demanding settlement on those claims based on

nothing more than the prospect of attorneys' fees. (Docket No. 43 at ECF p. 1). Experian argues

that BHC has developed a habit of bringing cases with hopes of leveraging litigation costs to

obtain settlement while having no intention of going forward on plaintiffs' allegations. (Docket

No. 43 at ECF p. 2). BHC responds and argues that Experian's motion is baseless and requests

1

cross sanctions for the attorney fees and costs associated with responding to its filing.[1] (Docket No. 51 at ECF p. 1). For the reasons that follow, the undersigned recommends Experian's Motion for Sanctions (Docket No. 42) be denied and recommends BHC's Cross Motion for Sanctions (Docket No. 51) also be denied.

## II.    Background

On September 6, 2017, Plaintiff brought this claim against Experian, and others, claiming violations of the FCRA based as to Experian on its reporting of debts allegedly excluded from Plaintiff's Chapter 13 bankruptcy. (Docket No. 43 at ECF p. 2). Specifically, the Complaint alleged that the "Experian credit report errantly reflects that Edwards's former obligation to PHH Mortgage was 'Discharged through Bankruptcy Chapter 13[]'" and that "[b]ecause Edwards's former obligation to PHH Mortgage was not discharged in bankruptcy and made payments after October of 2011, the information described above was inaccurate and misleading." (Docket No. 1 at ¶¶28-29).

On October 2, 2017, BHC sent Experian a settlement demand, which claimed "if successful in proving his claim, Mr. Edwards would [] be entitled to statutory damages, and an award of ever growing attorney fees and costs." (Docket No. 42-2 at ECF p. 1). On October 19, 2017, Experian responded, stating that it was not interested in settlement because "the inaccuracies alleged in the Complaint . . . are not the sort of inaccuracies for which the FCRA holds credit reporting agencies accountable." (Docket No. 42-2 at ECF p. 1). Experian further stated that Plaintiff's claims rested on "'the kind of legal question that credit reporting agencies are neither qualified nor obligated to answer.'" (Docket No. 42-2 at ECF p. 1) (quoting *Hupfauer*

---

[1] S.D. Ind. Local Rule 7-1(a) prohibits parties from filing a motion within a response filing. In its discretion, the Court will consider Plaintiff's request, however parties are reminded to review the requirements of Local Rule 7-1(a).

*v. Citibank, N.A.*, No. 16 C 475, 2016 WL 4506798, at *7 (N.D. Ill. Aug. 19, 2016)). Experian requested that the complaint be dismissed and stated it "believe[d] Plaintiff's claims to be meritless and that continued pursuit of these claims serve[d] only to harass Experian into settling to avoid the costs of further litigation." (Docket No. 42-2 at ECF p. 2). No further discussion occurred.

On October 20, 2017, Experian filed a motion to dismiss. (Docket No. 23, Docket No. 24). Plaintiff sought an extension of time to respond, which was granted, making the new deadline November 17, 2017. (Docket No. 30). Despite asking for the extension, BHC did not file a response and, instead, on November 20, 2017, contacted Experian regarding the submission of a joint proposed Case Management Plan for the matter. (Docket No. 42-3). On November 21, 2017, Experian filed a Reply brief to its uncontested Motion to Dismiss, stating that "BHC [would] almost certainly dismiss this case rather than defend Plaintiff's baseless allegations[.]" (Docket No. 34). On November 28, 2017, Plaintiff filed a voluntary Motion to Dismiss Experian Information Solutions, Inc., in which Plaintiff stated that "the parties [had] reached an informal resolution." (Docket No. 36 at ECF p. 1). Experian asserts that there were no settlement discussions after the filing of its Motion to Dismiss nor was a settlement ever reached. (Docket No. 42 at ECF p. 5).

Experian points to a larger pattern of repeated BHC abuses of the FCRA, focusing on 2017 cases with a similar procedural timeline as the present case. In 2017, Experian filed motions to dismiss in seven cases, including this case, all of which were never responded to by BHC. *See Wilson v. Equifax Information Services, LLC et al.*, 1:17-cv-00147-WTL-MJD, Dkt. 53 (S.D. Ind. Jan. 14, 2017); *Pinner v. Equifax Information Services, LLC et al.*, 1:17-cv-00955-JMS-MPB, Dkt. 24 (S.D. Ind. Mar. 29, 2017); *Edwards v. Equifax Information Services, LLC et*

*al.*, 1:17-cv-02905-WTL-MJD, Dkt. 25 (S.D. Ind. Aug. 23, 2017); *Powell v. Equifax Information Services, LLC et al.*, 1:17-cv-02985-WTL-MJD, Dkt. 35 (S.D. Ind. Aug. 23, 2017); *Miller v. Equifax Information Services, LLC et al.*, 4:17-cv-00167-RLY-TAB, Dkt. 18 (S.D. Ind. Sept. 6, 2017). In six of these cases, despite never responding to the Motion to Dismiss, BHC moved for an extension of time to reply. Six of these seven cases included the same language that an "informal resolution" was reached. Experian asserts that no resolution was reached in any of these six cases. (Docket No. 42-4).  One of the cases, *Edwards v. Equifax Information Services, LLC et al.*, 1:17-cv-2905-WTL-MJD, was brought by David Edwards' wife and related to the same PHH Mortgage account and same Chapter 13 bankruptcy at issue in this matter.

**III.    Conclusions of Law**

**A.  Applicable Vehicles for Sanctions**

As an initial matter, Plaintiff argues Experian did not follow Local Rule 7-1(g) and that 28 U.S.C. § 1927 is not a mechanism for awarding sanctions based on a party's failure to reasonably investigate a filing.  However, Local Rule 7.1(g), by its own terms, applies only to (a) "motion[s] for attorney's fees (other than post-judgment);" (b) "motion[s] for sanctions under Fed. R. Civ. P. 11";" and (c) "motion[s] to disqualify an attorney." S.D. Ind. Local Rule 7-1(g). Here, Experian's Motion for Sanctions was brought after judgment was entered, does not rely upon Rule 11, and does not seek to disqualify an attorney. Accordingly, Local Rule 7-1(g) does not apply. Likewise, as Experian is not seeking sanctions under Rule 11, Experian need not have met the procedural requirements of that rule. BHC cites *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187-88 (7th Cir. 1992) for the proposition that a court uses Rule 11 as a backdrop in evaluating a request for sanctions pursuant to its inherent authority and thus, the Rule 11 procedural requirements must be met. However, *Kotsilieris* only mentions Rule 11 once to analogize a

penalty principle between a Rule 11 sanction and a section 1927 sanction. *See id. at 1187-88*. The court actually awarded fees pursuant to section 1927. BHC also cites *Kapco Mfg. Co. Inc. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989), for this argument, but in that case the defendants expressly moved for sanctions pursuant to Rule 11. No authority was provided, nor any found based on independent research, that Rule 11 requirements be met when the Court considers a request for sanctions, in part pursuant to its inherent authority.

Plaintiff cites no authority for its argument that, because Experian did not move for sanctions pursuant to Rule 11, it is necessarily limited to alleged bad faith post-filing conduct found to have unreasonably continued these proceedings. Case law suggests otherwise. "The Seventh Circuit . . . has held that the filing of a complaint can constitute an unreasonable and vexatious multiplication of the proceedings and therefore be sanctionable under § 1927." *Webb v. Bd. of Trustees of Ball State Univ.*, No. IP 97-1268-T/G, 2001 WL 548314, at *16 (S.D. Ind. Mar. 20, 2001); *see also In re TCI Ltd.*, 769 F.2d 441, 447 (7th Cir. 1985) (quoting H.R. Conf. Rep. 96-1234, 96th Cong., 2d Sess. 8 (1980)) ("Rule 11 sets out a standard that we think applies equally to § 1927: a complaint must be 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'"). Likewise, because § 1927 imposes a continuing duty on attorneys to dismiss claims that are no longer viable, pre-filing conduct is also relevant to whether the continued pursuit of a case is unreasonable and vexatious. *See Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 848-49 (N.D. Ill. 2015) ("[T]he pre-filing timeline . . . support[s] [] the court's conclusion that . . . continued pursuit of this case was vexatious and an unnecessary multiplication of the proceedings under § 1927."). Section 1927 is a proper vehicle to assess whether the filing of a complaint was warranted.

Experian has only moved for an order of sanctions and award of attorney's fees against BHC, and not Mr. Edwards personally, pursuant, in part, to 15 U.S.C. § 1681n(c). However, Section 1681n(c) does not explicitly provide that a party's attorney may be compelled to pay his opponent's attorney's fees. Experian has cited nothing in the statute's legislative history, nor has this Court's independent search found anything, indicating that Congress intended to authorize a court to impose fees against an attorney. A case Experian itself cites supports this fact. *See Ryan v. Trans Union Corp., et al.*, 2001 WL 185182, *5 (N.D. Ill. Feb. 26, 2001). When an attorney's fee statute that permits recovery by a prevailing party is silent as to who may be required to pay the award, the statute has consistently been read to permit a fee award only against a party, not against the party's attorney. *See, e.g., Hamer v. Cty. of Lake*, 819 F.2d 1362, 1370 (7th Cir. 1987) (42 U.S.C. § 1988); *Corneveaux v. CUNA Mutual Ins. Grp.*, 76 F.3d 1498, 1508-09 (10th Cir. 1996) (42 U.S.C. § 2000e-5(k)); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 276 (3d Cir. 1990) (42 U.S.C. § 1988) (citing cases); *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 504 (3d Cir. 1991) (42 U.S.C. § 2000e-5(k)). *See generally Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 (1980) (indicating that fees under 42 U.S.C. § 1988 may be recovered only against a party, not the party's attorney). I find that § 1681n(c) does not authorize imposition of attorney's fees upon a party's lawyer.

## B. Standard

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy, personally, the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Specifically, the Seventh Circuit has held that "[i]f a lawyer pursues a path that a

reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 708 (7th Cir. 2016), *opinion modified on reh'g*, 832 F.3d 699 (7th Cir. 2016), *and cert. denied*, 137 S.Ct. 391, 196 L. Ed. 2d 296 (2016) (quoting *In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir. 1985)). "[C]ases in which [the Seventh Circuit] has upheld section 1927 sanctions have involved situations in which counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders." *Kotsilieris*, 966 F.2d at 1184-85.

The FCRA provides that "on a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." 15 U.S.C. §§ 1681n(c); 1681o(b). Courts in the Seventh Circuit have held that "bad faith" in this context "requires a showing either that the party subjectively acted in bad faith-knowing that he had no viable claim-or that he filed an action or paper that was frivolous, unreasonable, or without foundation." *Ryan v. Trans Union Corp.*, 2001 WL 185182, at *5 (N.D. Ill. Feb. 26, 2001).

The federal courts' "inherent authority to rectify abuses to the judicial process also authorizes sanctions for [] violations." *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003). Specifically, "[s]anctions meted out pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009).

**C.  Experian's Motion for Sanctions (Docket No. 42)**

Turning to the substantive portion of Experian's Motion to Dismiss, Experian argues that Plaintiff's complaint against it was frivolous and without foundation. (Docket No. 43 at ECF p. 9). Defendant contends it was filed in subjective and objective bad faith.

"[A] violation of § 1927 occurs when an attorney intentionally or recklessly 'file[s] . . . a claim that lacks a plausible legal or factual basis.'" *Fisher v. Samuels*, No. 84 C 3385, 1988 WL 107362, at *2 (N.D. Ill. Oct. 13, 1988) (citations omitted) (alterations in original). Plaintiff's complaint, as to Experian, alleges that it willfully and recklessly failed to comply with two provisions of the FCRA: Section 1681e(b), which requires credit reporting agencies to follow reasonable procedures to assure maximum accuracy of credit reports, and Section 1681i, which requires them to conduct a proper and reasonable investigation of allegedly inaccurate information included in credit reports. (Docket No. 1 at ECF p. 8). Experian's alleged violations of Section 1681e(b) arise from Plaintiff's original credit report, while its alleged violations of Section 1681i arise from the investigation report Experian prepared in response to his request for reinvestigation and by not modifying Plaintiff's file. *Id.*

In order to state a claim either Section 1681e(b) or Section 1681i, Plaintiff must allege that: "(1) inaccurate information was included in his consumer credit reports; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) he suffered injury; and (4) the injury was caused by the inclusion of the inaccurate entry." *Moline v. Experian Info. Sols., Inc.*, 289 F. Supp. 2d 956, 958 (N.D. Ill. 2003) (citation omitted); *see also Johnson v. Trans Union, LLC*, 524 Fed. Appx. 268, 270 (7th Cir. 2013) (holding that a plaintiff must show "that something in his credit report was inaccurate, or at least misleading, to show that the defendant's procedures were unreasonable

under 15 U.S.C. § 1681e(b) or that the defendants failed to reasonably reinvestigate under 15 U.S.C. § 1681i" (citations and internal quotations omitted)).

The Court must first determine if the attorney signing the pleading subjectively believed what is stated in that pleading "is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Serv., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993). In terms of subjective bad faith, Experian points to Plaintiff's request for a fourteen (14) day extension of time to file a response to the motion to dismiss, despite BHC having no intentions of responding—a pattern BHC had established in its six previous cases. (Docket No. 43 at ECF p. 13). Moreover, Experian argues that BHC's repeated misrepresentations to the Court, in this case and others, that the "the parties" had "reached an informal resolution" amounted to bad faith. BHC asserts it acted in good faith to avoid multiplying these proceedings when seeking dismissal. (Docket No. 52 at ECF p. 21). Specifically, Edwards obtained relief via resolution with other defendants, was able to use a report prepared by Equifax and TransUnion for his future credit needs, and therefore eliminated the practical need for BHC to continue litigation against Experian. (Docket No. 52 at ECF p. 22).

If this were the first case in which BHC voluntarily dismissed Experian after it filed a motion to dismiss, it would be relatively easy to conclude there was no subjective bad faith. However, where BHC has repeatedly decided to forgo responding to Experian's motions to dismiss, the door is certainly open to the possibility that BHC has measurable doubts as to the merits of the claims they have set forth. Plaintiff provides the defenses were not pursued because Plaintiff obtained relief via the cooperation of other defendants. (Docket No. 52 at ECF p. 22). This explanation, while plausible, is not entirely convincing. In this case, Plaintiff settled with

Equifax on November 2, but did not move to dismiss Experian until November 28. Moreover, Plaintiff admitted to never filing an action against TransUnion, as it corrected any alleged inaccuracies prior to litigation. This explanation is further weakened when we apply it to the other cases where BHC has forgone its claims after Experian has filed a motion to dismiss. *See, e.g.*, *Wilson v. Equifax Information Services, LLC et al.*, 1:17-cv-00147-WTL-MJD (S.D. Ind.) (Dkt. 41, Dkt. 52, Dkt. 54) (Plaintiff settled with both Equifax and TransUnion before Experian filed its Motion to Dismiss).

In fact, one of those case's legal and factual arguments were nearly identical to this case as it was brought by Mr. Edwards's wife, alleging the same claim that Experian inaccurately reported the PHH Mortgage as discharge when it was exempted from discharge due to the plan's provision for direct payments on the account. *See Edwards v. Equifax Information Services, LLC et al.*, 1:17-cv-02905-WTL-MJD, Dkt. 37 (S.D. Ind. Aug. 23, 2017). Yet, BHC moved to dismiss Mrs. Edwards's claims against Experian nearly four weeks prior to dismissing Mr. Edwards's identical claims against Experian.

However, the court disagrees with Experian that BHC's repeated motions for extension of time before declining to respond to Experian's motions to dismiss are necessarily "calculated to increase costs to Experian in hopes that Experian may one day decide to cut its losses and simply pay nuisance-value settlements in these cases." (Docket No. 54 at ECF p. 12). It is plausible that BHC is considering whether the instant case is the right case for BHC to set forth the arguments it has raised within this briefing—which are analyzed herein. Experian has no direct evidence for this contention and Experian's contention is diluted by the fact that, after the aforementioned litigation, BHC is well aware that Experian will file a motion to dismiss rather than engage in settlement discussions.

BHC's language in dismissing this case, as well as others, where it represents that "the parties [have] reached an informal resolution." (Docket No. 36), is imprecise, misleading and should not be used in the circumstances. At a minimum, stating that the parties reached a resolution, informal or otherwise, leads to the inference that the parties in question discussed the resolution. However, I do not find that the use of this language, considered by itself or in conjunction with BHC's other litigation decisions, rises to the level of sanctionable conduct. *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013).

Based on the facts currently before the court, I do not find that BHC subjectively acted in bad faith with indifference to statutes, rules, or court orders as required for sanctions under 28 U.S.C. § 1927. *Kotsilieris*, 966 F.2d at 1184-85.    However, the Court is not unsympathetic to the challenges BHC's litigation strategy has presented to Experian in fairly and efficiently defending allegations raised against it. BHC's repeated election to voluntarily dismiss Experian rather than respond to its motion to dismiss prevents BHC from adjudicating the legal arguments that it raises before this court today in a motion to dismiss context.[2] It leaves BHC free to

---

[2] Experian has submitted *Collins v. Diversified Consultants, Inc., et al.*, 1:15-cv-02115-RBJ-NYW (Dkt. 293) (D. Colo. Feb. 7, 2018), as supplemental authority to illustrate subjective bad faith. While the Court granted leave for the unopposed motion to file supplemental authority (Docket No. 60), it nonetheless finds that *Collins* is neither binding on this Court nor on point. Experian directed the Court to pages thirteen to fifteen of the decision, which largely included a discussion by the court as to the decision to award attorney's fees against a pro se Plaintiff that had, himself, filed thirty-five lawsuits in Colorado state and federal courts—several being FDCPA or FCRA litigation, within the last decade. (Docket No. 60-1 at ECF p. 13-14).

The Court had previously permitted an award of attorney's fees against Mr. Collins, noting in that instance that two factors pushed the case across the line into vexatiousness and bad faith: (1) the instant case was the ninth time that Mr. Collins had settled or lost a case, only to file the same claim again in a new suit and (2) Mr. Collins had again filed a claim under the Colorado Consumer Protection Act without any allegation or showing of public impact, despite having been told by courts at least three previous occasions that he could not do that. (Docket No. 60-1 at ECF p. 14). The Court went on to find the instant case also rose to the level of vexatiousness and bad faith because Mr. Collins files multiple claims (the same claims he has litigated

continue the practice without giving Experian the opportunity to have these legal arguments considered in the context of a motion to dismiss.  Continued use of these tactics by BHC against Experian may very well result in a different conclusion in the future.

"It is not enough that the attorneys' subjective belief and purpose are innocent; it is also necessary that the mental state be based upon reasonable inquiry, objectively analyzed, into the basis for the facts alleged and into the law." *Harlyn Sales Corp.*, 9 F.3d at 1270. Experian argues that Plaintiff's allegation—that Experian inaccurately reported Plaintiff's PHH Mortgage account as discharged, when it had, in fact, been exempted from discharge by operation of Plaintiff's bankruptcy plan which provided for direct payments to PHH Mortgage—was legally invalid. Experian argues BHC should have known that this theory of liability was legally invalid because: (1) the PHH Mortgage was, in fact, discharged and (2) because even if the PHH Mortgage were exempted from discharge, Experian cannot be liable for failing to make that determination, as it would have required that Experian make a legal determination that courts have found credit reporting agencies are neither qualified nor obligated to answer. (Docket No. 43 at ECF p. 9). Experian argues it had establish the legal unviability of Plaintiff's claims in several of the aforementioned case's motions to dismiss—all of which went unresponded to by Plaintiff and that it also informed BHC of these very same arguments in its October 19, 2017, letter. (Docket No. 43 at ECF p. 12). Plaintiff argues there was no objective bad faith as the

---

unsuccessfully time and again) and then drops the most obviously groundless ones after the defendants have responded. (Docket No. 60-1 at ECF p. 15). Because Collins was pro se, repeatedly filed the same claims (not different claims using the same or similar legal theories), and had previously been warned and sanctioned by the court, the case is not analogous at this juncture.

complaint was not frivolous or pursued in bad faith as the underlying facts did not require Experian to make an inappropriate legal determination. (Docket No. 52 at ECF p. 15).

Experian first argues that Plaintiff's claim lacked legal plausibility because the PHH Mortgage was discharged, as it was listed on Plaintiff's bankruptcy schedules, provided for by Plaintiff's plan, and not subject to any pre-petition arrearages (and therefore outside the scope of 11 U.S.C. § 1328's exception to discharge for long term debts treated under § 1322(b)(5)).

Experian points to the bankruptcy court's discharge order, which does not specify which of Plaintiff's debts were discharged and which were not. *See In re David Merle Edwards and Gloria Setzer Edwards*, No. 11-14741-JMC-13, Dkt. 55 (Bankr. S.D. 2011). Further, there is no provision in the bankruptcy code that prohibits discharging mortgage debts in a Chapter 13 bankruptcy. *See* 11 U.S.C. § 1325(a)(5) (describing how secured claims may be provided for in the plan); *In re Curtis*, 322 B.R. 470, 481 (Bankr. D. Mass. 2005) (explaining that under 11 U.S.C. § 1325(a)(5) "modification may include converting a secured claim, even on a debtor's principal residence, where the claim is wholly unsecured" and that the claim may be discharged). Nor is a particular mortgage debt necessarily spared from discharge because the debtor was required to and continued to make all payments owed to the creditor. *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."); *In re Irby*, 337 B.R. 293, 295 (Bankr. N.D. Ohio 2005) (explaining that it is "a common misconception . . . that the bankruptcy discharge eliminates the very existence of a debt.").

Experian also argues that 11 U.S.C. § 1322(b)(5)'s exceptions to discharge were inapplicable to the PHH mortgage. Pertinent to this analysis, section 1328(a) "grant[s] the debtor

a discharge of all debts provided for by the plan . . . except any debt provided for under section 1325(b)(5). 11 U.S.C. § 1328(a). Then, 1322(b)(5) states:

> "[T]he plan may . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

11 U.S.C. § 1322(b)(5). On its face, Experian argues that this section only exempts those long term debts where the debtors chapter 13 plan requires the debtor to cure arrears. (Docket No. 54 at ECF p. 16). It points to *In re Rogers*, 494 B.R. 664, 669 (Bankr. E.D.N.C. 2013) ("[T]he exception to discharge under § 1322(b)(5) is not implicated where there is no prepetition default or arrearages for debtors to cure."). Here, the Edwards's confirmed plan did not include any pre-petition arrearages. *See In re David Merle Edwards and Gloria Setzer Edwards*, No. 11-14741-JMC-13, Dkt. 2 at 2 (Bankr. S.D. Ind. 2011).

Other authority supports Experian's position that § 1322(b)(5)'s excerption requires prepetition arrears. *See In re Lane*, No. 97-06850-8-JRL (Bankr. E.D.N.C. July 13, 2006) (holding that § 1322(b)(5) did not except the unsecured deficiency from discharge because the debtors were not in default as of the petition date and, therefore, their confirmed plan did not contain a provision to cure any prepetition arrears or default). 8 *Collier on Bankruptcy* ¶ 1328.02[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) ("[A] debt is not dischargeable under this subsection simply because it is a long-term debt that could be cured under section 1322(b)(5); it is nondischargeable only if cure is, in fact, provided for by the plan.").

Plaintiff contends that section 1328(a)(1) read in conjunction with 1328(b)(5) results in excerpting from discharge secured claims on which the last payment is due after the final plan

14

payment, irrespective of whether there are any arrears to cure. (Docket No. 52 at ECF p. 13). In the instant case, Plaintiff argues, the terms of the underlying Note and Mortgages, even Experian's own reporting, make it readily apparent the last payments were due long after the date of the final plan payment and, therefore, the debts were excerpted from discharge. Plaintiff cites, *In re Hunt*, No. 14-02212-5-DMW (Bankr. E.D.N.C. Jan. 7, 2015), a "rare [case] in Chapter 13 where the mortgage payment is not in arrears, and the loan is not in default." That court held, in interpreting § 1322(b)(5), that:

> Notwithstanding the reference in § 1322(b)(5) to the 'curing of any default,' nothing in the statutory language suggests that the provision is restricted to circumstances where there is an existing default [on the petition date].

(Docket No. 59-1 at ECF p. 4) (quoting *Jones v. Branch Banking & Trust Co.*, No. 5:09-CV-00419-FL, slip op., at 5-6 (E.D.N.C. Feb. 9, 2010) (citations omitted); *see also In re Tollios, 491 B.R. 886*, 890 (Bankr. N.D. Ill. 2013) ("this phrase permits the continuation of monthly payments on 'any' long-term debt, not just long-term debt on which debtors owe pre-petition arrears. Thus the language of § 1325(b)(5) makes it clear that debtors may maintain monthly payments regardless of whether they owe pre-petition arrears."); *Cloud v. CitiFinancial Inc. (In re Cloud), 2013 Bankr. LEXIS 393, at *4 (Bankr. S.D. Ga. Jan. 31, 2013)* ("§ 1322(b)(5) encompasses all long-term debt, [and] not just debt with a prepetition default cured through the plan . . .."). The *Hunt* court criticizes the aforementioned authority relied upon by Experian, concluding that "[n]othing about the permissive nature of § 1322(b)(5) suggests that a cure must take place in order for § 1322(b)(5) to apply. (Docket No. 59-1 at ECF p. 4); *see In re Chappell, 984 F.2d 775, 781 (7th Cir. 1993)*.

Given this conflicting authority as to whether § 1325(b)(5) is applicable to monthly payments regardless of whether there is pre-petition arrears, Experian has not met its burden that

Edwards's claims were frivolous because they lacked legal plausibility based on the argument that PHH Mortgage was discharged as outside the scope of 11 U.S.C. § 1328's exception to discharge.[3]

Second, Experian argues that Plaintiff's claim lacked legal plausibility because even if the PHH Mortgage were exempted from discharge, Experian cannot be liable for failing to make that determination, as it would have required that Experian "search[] [Plaintiff's] bankruptcy court file and scour[] all the filings' before "consult[ing] with an attorney to determine whether a certain account may fall into one of the many exceptions to discharge" and is thus "precisely the kind of legal question that credit reporting agencies are neither qualified nor obligated to answer." *Hupfauer*, 2016 WL 4506798, at *7 (N.D. Ill. Aug. 19, 2016). Plaintiff does not dispute the general proposition that the FCRA does not require Experian to settle legal disputes— instead, Plaintiff argues that Edwards's claim did not require Experian to make a legal determination.

In *Hupfauer*, a Northern District of Illinois opinion, the plaintiff brought claims for the negligent and willful violation of both 1681e(b) and 1681(i)(a) stemming from Experian's alleged post-discharge reporting of a $988 scheduled monthly payment. *Hupfauer*, 2016 WL 4506798. In addition, the plaintiff complained of Experian's pre-discharge reporting reflecting the account was 150 days past due in February 2014, 180 days past due in March of 2014, and that the account was listed as subject to foreclosure proceedings starting in April of 2014, before

---

[3] This recommendation, as well as all the recommendations within this Entry, is not intended to be a conclusive finding that Edwards's debt was not discharged in the bankruptcy. Given that Edwards did dismiss his claims against Experian voluntarily, without a court ruling on Experian's motion to dismiss, this report and recommendation is not to be construed as a determination as to whether Edwards would have ultimately prevailed on his legal arguments. Instead, the Court considers whether Experian has met its burden as to establish that Edwards's claims lacked legal or factual plausibility to permit Experian to recover damages pursuant to section 1927.

being foreclosed upon in December 2014. Because the plaintiff filed for Chapter 13 bankruptcy on January 30, 2014, she alleged the pre-discharge bankruptcy reporting was inaccurate because at that time her, "confirmed Chapter 13 Plan became the operative instrument for [her] relationship with Citi" and her monetary payment obligation to Citi pursuant to the plan was $0. The *Hupfauer* court summarily dismissed the allegations regarding the post-discharge scheduled payment because the credit report she attached to her complaint contradicted the allegation—no post-discharge reporting existed.

Ms. Hupfauer also argued that even if her credit report was not technically inaccurate, it violated the FCRA by presenting misleading information.[4] *Hupfauer*, 2016 WL 456798, at *6. The Court rejected that argument with an analysis heavily relied on by Experian in this case:

> [R]equiring a third party such as a credit bureau to determine whether a specific account was discharged in a particular consumer's Chapter 13 bankruptcy would impose an unfairly heavy burden on that party. *See generally Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015). Plaintiff's discharge order does not specify which particular debts were discharged, and even states that the reader "may want to consult an attorney to determine the exact effect of the discharge in this case." Plaintiff aptly notes that "[t]he only practical means to [determine whether a particular debt is discharged] is by searching a consumer's actual bankruptcy court file and scouring all the filings," requiring the third party to "consult with an attorney to determine whether a certain account may fall into one of the many exceptions to discharge as set forth in 11 U.S.C. § 1328." (R. 42, Resp. at 4-5). This is precisely the kind of legal question that credit reporting agencies are neither qualified nor obligated to answer. *DeAndrade*, 523 F.3d at 68. This Court declines to impose such a burden on credit reporting agencies[.]

---

[4] Much of Plaintiff's response brief (Docket No. 52) is dedicated to distinguishing *Hupfauer* from this case on the basis that in *Hupfauer* there were no allegations the report was misleading. This argument is unpersuasive given that nearly half of the opinion is dedicated to *Hupfauer's* misleading allegations.

*Hupfauer*, 2016 WL 456798, at *6. In coming to this conclusion, the court heavily relied on

*DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008).

In *DeAndrade*, the plaintiff purchased new windows for his home utilizing mortgage

financing arranged by the retailer. *Id.* at 63. The plaintiff and his wife signed documents in

connection with this financing, creating a lien on their home. *Id.* After making twenty-two

monthly payments on the obligation to the lender, the DeAndrade's claimed, "their signatures on

the documents appeared to be forged." *Id.* Thus, the DeAndrade's stopped payments, filed an

action for declaratory relief against the lender and during the pendency of that suit disputed the

presence of the missed payments on Mr. DeAndrade's credit reports to the CRAs. *Id.* at 63-64. In

dismissing the plaintiff's inaccuracy allegation, the court held: "[t]o determine whether a

consumer has identified a factual inaccuracy on his or her credit report that would activate §

1681i's reinvestigation requirement, '[t]he decisive inquiry' is whether the defendant credit

bureau could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter'" *Id.*

at 68 (quoting *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)). The court also

concluded:

> Here, there is no dispute that DeAndrade received windows financed
> by a mortgage on his home; what DeAndrade is attacking is the
> mortgage's validity. Whether the mortgage is valid turns on
> questions that can only be resolved by a court of law, such as
> whether DeAndrade ratified the loan. This is not a factual
> inaccuracy that could have been uncovered by a reasonable
> reinvestigation, but rather a legal issue that a credit agency such as
> Trans Union is neither qualified nor obligated to resolve under the
> FCRA. *See Cahlin*, 936 F.2d at 1160 ("No reasonable
> reinvestigation on the part [of the credit agency] could have
> uncovered an inaccuracy in Cahlin's report because there was never
> any actual factual deficiency in the report.").

*DeAndrade*, 523 F.3d at 68; *see also Williams v. Colonial Bank*, 826 F. Supp. 415, 418 (M.D.

Ala. 1993) ("A credit reporting agency has no duty, as a part of its reinvestigation, to go beyond

public records to check for accuracy or completeness when a consumer is essentially collaterally attacking he underlying credit information). Conversely, *DeAndrade* noted "[i]f a court ruled the mortgage invalid and Trans Union had continued to report it as a valid debt, *then* DeAndrade would have grounds for a potential FCRA claim." *Id.* at 68 (emphasis in original).

*Cornock v. Trans Union LLC*, 638 F. Supp. 2d 158 (D. N.H. July 29, 2009), further considered *DeAndrade*, and held that it did not base its definition of "accuracy" under 15 U.S.C. § 1681i on the unworkable distinction between a "factual and a "legal" inaccuracy in a reported debt because almost every dispute could be classified both ways, depending on the parties' arguments. *Id.* at 164. Rather, the court provided "inaccuracy" turns on whether the credit bureau could have uncovered the inaccuracy via a reasonable reinvestigation. *Id.*

*Hupfauer* also relied on *Childress v. Experian Information Solutions, Inc.*, 790 F.3d 745 (7th Cir. 2015), a case where the Seventh Circuit affirmed summary judgment for Experian where the plaintiff had complained that her credit report inaccurately described her bankruptcy petition as "dismissed" rather than "withdrawn" to show that she had voluntary withdrawn the filing. In affirming, the Seventh Circuit pointed to the statutory requirements of 15 U.S.C. § 1681c(d)(1), which provides that "'if any case arising or filed under Title 11 [the Bankruptcy Code] is withdrawn by the consumer before a final judgment, the consumer reporting agency shall include in the report that such case or filing was withdrawn u*pon receipt of documentation certifying such withdrawal*.'" *Childress*, 790 F.3d at 746 (quoting 15 U.S.C. § 1681(c)(d)(1)) (emphasis added).  The court rejected Childress's argument that—(despite the statute) the agency should not require such documentation, but instead should monitor all dismissals of bankruptcy petitions and investigate to determine whether they were dismissed at the request of the petitioner—because the approach was inconsistent with the statute and because it would require

a human, with at least a little legal training, to review every bankruptcy dismissal because Lexis had been unable to develop a reliable computer algorithm to automatically make the determination. *Id.* at 747. Given the explicit statutory requirement applicable in Childress—that case is not akin to Edwards's case to permit the conclusion that, under binding Seventh Circuit law, it is well-settled law that Edwards's claims are legally implausible.

Considering these cases and others, there is a line between alleging a factual deficiency that a credit reporting agency was obliged to investigate pursuant to the FCRA and "launching an impermissible collateral attack against a lender by bringing an FCRA claim against a consumer reporting agency." *See DeAndrade*, 523 F.3d at 68. Experian argues that it is well-settled law that the alleged inaccuracy in question is on the latter side of the line. *Hupfauer*, a non-binding Northern District of Illinois case is the only case Experian provides that comes close to the same factual context as Edwards's case, as both require the consideration of whether a debt was discharged in bankruptcy. While *Hupfauer*'s language that "requiring a third party such as a credit bureau to determine whether a specific account was discharged in a particular consumer's Chapter 13 bankruptcy would impose an unfairly heavy burden on that party" is supportive of Experian's argument, I decline to conclude that this equates to "well-settled" law that made Edwards's claims legally implausible under section 1927 standards. *Hupfauer* is persuasive upon this court only, not binding. *Hupfauer* also had factual differences from this case that very well could impact its applicability, mainly that Edwards did make payments whereas Hupfauer did not allege payments had been made.

Other cases have held that credit reporting agencies have some duty to train their employees to understanding the legal significance and effect of the documents they rely upon. *See, e.g., Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1070-71 (9th Cir. 2008) (holding that the credit

reporting agency was negligent in mis-interpreting the court filing as an entry of judgment and also responsible for the negligence of the investigation service it hired to review the plaintiff's court file as that service overlooked the legal significance of the entry showing that the case against Plaintiff was dismissed). Thus, there is a line between the credit reporting agency's duty to properly interpret court records and to make a legal determination that only an attorney could make. Experian has not met its burden that it would be objectively unreasonable for an attorney to argue that Edwards's scenario requires the latter.

For these reasons, I recommend that Experian's Motion for Sanctions (Docket No. 42) be denied.

## D.  BHC's Motion for Sanctions (Docket No. 54)

Plaintiff moves for sanctions in the form of an award of Edwards's attorney's fees and costs associated with responding to Experian's Motion for Sanctions pursuant to 28 U.S.C. § 1927. (Docket No. 51). Plaintiff argues that Experian's motion and its blanket statements of well settled law is a misrepresentation of the law.

The same standard as used in Experian's motion applies here. In order for BHC to prevail it must show that Experian's filing lacked legal or factual plausibility such that making the argument amount to vexatiousness and bad faith. Given the authority discussed within this recommendation and the detailed analysis it required, one can hardly argue that Experian's motion lacked factual and legal plausibility. The Court is unpersuaded by BHC's argument that it was bad faith for Experian to wait to bring this motion for sanctions. In fact, in some cases, the continued pattern lends to the sanction's analysis. *See also Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010) ("[A] litigant can't be allowed to file repeated meritless suits with impunity just so long as he does not protract any one of them unreasonably.").

Plaintiff cites cases where courts "have routinely required Experian and other credit reporting agencies to appropriately maintain, reinvestigate, and report bankruptcy effected consumer information as well as items tangentially related to some legal determination." (Docket No. 52 at ECF p. 25). Yet these cases are not akin to the Edwards case. *See e.g.*, *Edeh v. Equifax Information Services, LLC*, 2012 WL 4358646 (D. Minn. Sept. 21, 2012) (Equifax could not argue "it was merely stuck in the middle of a legal dispute" as that ignored the factual records and it was not the only dispute the Plaintiff presented); *Freedom v. Citifinancial, LLC*, 2016 WL 4060510 (N.D. Ill. July 25, 2016) (addressing Chase's motion to dismiss. I note the "direct quotation" BHC asserted came from this case could not be found upon my review); *Morgan v. Equifax Info. Servs., LLC*, 2017 U.S. Dist. LEXIS 44871 (N.D. Ill. Mar. 28, 2017) (denying Experian's motion for judgment on the pleadings while never addressing the legal dispute topic). Moreover, if these cases were akin, one would expect BHC to have relied upon them in responding to Experian's own motion for sanctions—yet it did not.

Finally, Experian's own motion for sanctions was generated, primarily, as a result of BHC's own litigation decision to forgo responding to Experian's motion to dismiss in seven different cases. Therefore, Experian's motion was unavoidable and while I do not find that Experian met its burden of proving vexatiousness and bad faith, I also do not believe there is any evidence that Experian acted in bad faith in bringing the motion.

For all these reasons, I recommend that BHC's Motion for Sanctions (Docket No. 51) be denied.

### IV. Conclusion

For the above reasons, the undersigned recommends that Experian's Motion for Sanctions (Docket No. 42) and BHC's Motion for Sanctions (Docket No. 51) be denied.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO ORDERED.**

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

**Dated:** March 13, 2018